# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| JEFF POFF,<br><br>                      Plaintiff,<br>v.<br><br>WISCONSIN RESOURCE CENTER,<br>KEITH FRY, RHONDA HITZ,<br>JEFF HEISE, CAPTAIN BUNK,<br>CAPTAIN SCHMIDT, PCS SCOTT,<br>PCS LORI, a/k/a UNIT 9/11<br>PHYSCOLOGYST, NURSE KATHY,<br>JOHN DOES 1-8, JANE DOE 1,<br><br>                      Defendants. | Case No. 16-CV-1225-JPS<br><br><br><br><br>**ORDER** |

        The plaintiff, who is incarcerated at Columbia Correctional Institution, filed a *pro se* complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated. (Docket #1). This matter comes before the Court on the plaintiff's motion to proceed without prepayment of the filing fee. (Docket #2). The plaintiff has been assessed and paid an initial partial filing fee of $4.61. 28 U.S.C. § 1915(b)(4).

        The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. *Id.* § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Gladney v. Pendelton Corr. Facility*, 302 F.3d 773, 774 (7th Cir. 2002). The Court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327; *Gladney*, 302 F.3d at 774. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." *Lindell v. McCallum*, 352 F.3d 1107, 1109 (7th Cir. 2003) (citations omitted); *accord Paul v. Marberry*, 658 F.3d 702, 705 (7th Cir. 2011).

To state a cognizable claim under the federal notice pleading system, the plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). It is not necessary for the plaintiff to plead specific facts, and his statement need only "give the defendant fair notice of what the…claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see Christopher v. Buss*, 384 F.3d 879, 881 (7th Cir. 2004). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S.

at 556). The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted); *Christopher*, 384 F.3d at 881.

In considering whether a complaint states a claim, courts should follow the principles set forth in *Twombly* by first "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Legal conclusions must be supported by factual allegations. *Id.* If there are well-pleaded factual allegations, the Court must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

To state a claim for relief under 42 U.S.C. § 1983, the plaintiff must allege that: (1) he was deprived of a right secured by the Constitution or laws of the United States; and (2) the deprivation was visited upon him by a person or persons acting under color of state law. *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Kramer v. Village of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004)); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The Court is obliged to give the plaintiff's *pro se* allegations, "however inartfully pleaded," a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

The plaintiff alleges the following in his complaint: in mid-March 2012, the plaintiff was transferred from Waupun Correctional Institution ("WCI") to the Wisconsin Resource Center ("WRC") to receive mental health treatment and specifically to attend post-traumatic stress disorder ("PTSD") therapy. On April 12, 2012, around 4:00 p.m., a guard approached the plaintiff and told him to pack his belongings to move to the segregation unit.

The guard told the plaintiff the transfer was due to an incident that took place on the "A-side." The plaintiff obeyed the command without incident.

On April 16, 2012, Defendant Fry took the plaintiff out of his cell in Unit II to interrogate him about an alleged fight in which the plaintiff had participated. The plaintiff stated he knew nothing about the allegations and declined to answer any further questions. Defendant Fry then returned the plaintiff to his cell. Following this incident, a "treatment team" consisting of Defendants Fry, Hitz, Hiese, Bunk, Jane Doe Unit 9 Psychologist, and possibly two other people, met and decided to transfer the plaintiff back to WCI and deny him mental health treatment. The plaintiff maintains that the defendants made this decision without conducting a program review committee hearing, a violation of his due process and state law rights.

Shortly after returning to his cell, Defendant Jane Doe Unit 9 Psychologist called the plaintiff to his cell door. She told the plaintiff, without explanation, that he was no longer able to receive PTSD therapy at WRC. The plaintiff alleges that this action violated his right to be informed about his medical treatment.

On April 17, 2012, while attending Unit 11 "Day Room Recreation," the plaintiff asked to use the telephone to call his family. Defendant PCS Lori denied his request. He asked a second time and to speak to a supervisor, but PCS Lori replied, "No! Now leave me alone." The plaintiff asked again, and in response PCS Lori made a "trouble call" and eight to ten security staff members. identified in the complaint as Defendants John Does 1-8, ran onto Unit 11. Without any warning, the security staff members tackled the plaintiff to the floor where he was kicked and punched several times.

After this attack, security staff threatened the plaintiff with a stun gun if he refused to walk to an observation cell. Although the plaintiff was injured, he forced himself to comply and limped to the observation cell. Defendant PCS Scott and other unknown staff members escorted the plaintiff with PCS Lori to the observation cell. During this walk, the plaintiff commented that his left hand was bleeding and he required medical assistance. Defendants denied him any medical treatment at this time. Further, once inside the observation cell the plaintiff saw Defendant Nurse Kathy delivering medication to other prisoners. The plaintiff screamed for help from Nurse Kathy to treat his injuries, but she refused to talk to him or provide any treatment.

Shortly after this incident, PCS Lori called the plaintiff to his cell door and told him the reason he could not use the phone was that he was being transferred to WCI in the morning. The plaintiff then asked PCS Lori if she knew that he had a history of trying to hang himself; PCS Lori replied, "yes," and asked the plaintiff if he was feeling suicidal at that time. The plaintiff stated that he was feeling suicidal, and PCS Lori placed him on "observation status." PCS Lori allowed the plaintiff to keep all of his clothing and a mattress in the room with him during this time.

At about midnight on April 18, 2016, the plaintiff began feeling extremely hopeless and prepared to kill himself; he cut up his t-shirt, made a noose from it, and tied it to an opening in the light fixture. The plaintiff then placed his head into the noose and attempted to hang himself. A guard on the third shift round found the plaintiff in this state, cut him down, and a nurse revived the plaintiff.

Following this incident, Defendant Schmidt asked the plaintiff if he would do this again if given the chance. The plaintiff replied he would and further stated that he would be dead within twenty-four hours if they sent him back to WCI. In response, Defendant Schmidt ordered that the plaintiff be placed in four-point restraints, meaning that his wrists and ankles were bound. The plaintiff remained in this restrained position for approximately eight hours until his transfer to WCI. As a result of the tight restraints, the plaintiff alleges his wrists and ankles are permanently scarred.

The Court will analyze below each of the plaintiff's claims asserted in his complaint.

**1.     Medical Deliberate Indifference**

The plaintiff first alleges deliberate indifference to a serious medical need, in violation of the Eighth Amendment. To state a claim of deliberate indifference to serious medical need, the plaintiff must show: (1) an objectively serious medical condition; (2) that the defendants knew of the condition and were deliberately indifferent in treating it; and (3) this indifference caused the plaintiff some injury. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). The deliberate indifference inquiry has two components. "The official must have subjective knowledge of the risk to the inmate's health, and the official also must disregard that risk." *Id.* Even if an official is aware of the risk to the inmate's health, "he is free from liability if he 'responded reasonably to the risk, even if the harm ultimately was not averted.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 843 (1994)). Negligence cannot support a claim of deliberate indifference, nor is medical malpractice

a constitutional violation. *Estelle*, 429 U.S. at 105-06; *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011).

Here, the Court finds that the plaintiff sufficiently states a claim for deliberate indifference to a serious medical need against certain defendants. Following the altercation where the plaintiff alleges he was punched and kicked on the ground, he told Defendants PCS Scott, PCS Lori, and John Does that his hand was bleeding and that he needed medical attention. These defendants all ignored his plea for help and denied him medical treatment. Additionally, once in the observation cell the plaintiff requested medical assistance for his injuries from Defendant Nurse Kathy, who also denied him treatment. Based on these allegations, the Court will allow the plaintiff to proceed on claims for medical deliberate indifference against Defendants PCS Scott, PCS Lori, Nurse Kathy, and John Does.

The Court does not, however, find that the complaint states a claim for deliberate indifference against Defendants Fry, Hitz, Heise, Bunk, or Schmidt. The plaintiff alleges that Defendants Fry, Hitz, Hiese, and Bunk were part of the treatment team that decided to transfer the plaintiff back to WCI. To begin, a prisoner has no liberty interest in avoiding transfer to another prison, be it out-of-state, more restrictive, or owned and run by a private corporation. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Leslie v. Wisconsin Dep't of Corr.*, 215 F.3d 1330 (7th Cir. 2000). Further, the complaint contains no information about any treatment that he did or did not receive following his transfer to WCI. The plaintiff's conclusory allegation that these defendants specifically made this decision to deny him access to mental health treatment is insufficient to state a claim for deliberate indifference.

As to Defendant Schmidt, the complaint fails to state a claim for medical deliberate indifference. Defendant Schmidt saw the plaintiff immediately following his suicide attempt. The plaintiff indicated that he would attempt to harm himself again if given the opportunity. As a result, Defendant Schmidt placed him in restraints to prevent another suicide attempt. Based on these facts alone, the plaintiff fails to state a claim for medical deliberate indifference against Defendant Schmidt.

**2.     Failure to Protect**

The Seventh Circuit has held that failure to provide protection constitutes an Eighth Amendment violation only if deliberate indifference by prison officials to a prisoner's welfare "'effectively condones the attack by allowing it to happen.'" *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010) (quoting *Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir. 1997)). To sustain his Eighth Amendment claim, the plaintiff has to allege facts sufficient to show "that the defendants had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Id.*

The Court finds that the plaintiff may proceed against Defendant PCS Lori on his failure to protect claim. The plaintiff alleges that PCS Lori was aware of his history of attempting to hang himself and knew that he was suicidal on April 17, 2012, but nonetheless allowed him to remain in an observation cell with the tools to hang himself—*i.e.*, his clothing and a mattress. At this juncture, it is unclear whether PCS Lori's actions were a result of mere negligence, which is insufficient to state an Eighth Amendment claim, *Estelle*, 429 U.S. at 105-06, or actual knowledge of an impending harm.

As such, the Court will allow a claim for the failure to protect to proceed against Defendant PCS Lori.

**3. Excessive Force**

Finally, the plaintiff alleges excessive force claims in violation of the Eight Amendment. The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment. *See Wilkins v. Gaddy*, 559 U.S. 34, 34 (2010). An inmate must show that an assault occurred and that "it was carried out 'maliciously and sadistically' rather than as part of 'a good-faith effort to maintain or restore discipline.'" *Id.* at 40 (citing *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). Several factors are relevant to this determination, including the need for force, the amount of force applied, the threat a guard reasonably perceived, the effort made to temper the severity of the force used, and the extent of the injury caused to the prisoner. *Hudson*, 503 U.S. at 7; *Fillmore v. Page*, 358 F.3d 496, 504 (7th Cir. 2004).

Here the plaintiff sufficiently states a claim for excessive force, in violation of the Eighth Amendment, against Defendants John Does 1-8 and Defendant Schmidt. The plaintiff alleges that Defendants John Does 1-8 tackled him, without warning or cause, and punched and kicked him multiple times. Additionally, the complaint states a claim of excessive force against Defendant Schmidt, who allegedly placed tight restraints on the plaintiff for eight hours, causing severe scarring to the plaintiff's wrists and ankles. The Court recognizes that Defendant Schmidt restrained the plaintiff in an effort to prevent another suicide attempt, which does not suggest that his action was motivated by malice. However, the plaintiff further alleges

that the amount of force used caused permanent scarring to his wrists and ankles, which may suggest that more force was used than necessary to protect the plaintiff. As such, at this juncture the Court will allow the plaintiff to proceed on claims for excessive force against Defendants John Does 1-8 and Schmidt.

In conclusion, the Court finds that the plaintiff may proceed on the following claims: (1) medical deliberate indifference, in violation of the Eighth Amendment, against Defendants PCS Scott, PCS Lori, Nurse Kathy, and John Does; (2) failure to protect, in violation of the Eighth Amendment, against Defendant PCS Lori; and (3) excessive force, in violation of the Eighth Amendment, against Defendants John Does 1-8 and Schmidt.

Accordingly,

**IT IS THEREFORE ORDERED** that the plaintiff's motion for leave to proceed without prepayment of the filing fee (Docket #2) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, copies of the plaintiff's complaint and this order will be electronically sent to the Wisconsin Department of Justice for service on the state defendants;

**IT IS FURTHER ORDERED** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, the defendants shall file a responsive pleading to the complaint within sixty (60) days of receiving electronic notice of this order;

**IT IS FURTHER ORDERED** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from the plaintiff's

prison trust account the balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action;

**IT IS FURTHER ORDERED** that a copy of this order be sent to the warden of the institution where the inmate is confined; and

**IT IS FURTHER ORDERED** that the plaintiff shall submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS; doing so will only delay the processing of this matter. As each filing will be electronically scanned and entered on the docket upon receipt by the Clerk of Court, the plaintiff need not mail copies to the defendants. All defendants will be served electronically through the Court's electronic case filing system. The plaintiff should also retain a personal copy of each document filed with the Court.

The plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.

In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin, this 1st day of December, 2016.

BY THE COURT:

s/ *J. P. Stadtmueller*
J.P. Stadtmueller
U.S. District Judge